IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PATSY J. SHOUP,                          :

        Plaintiff,                    Case No. 3:12-cv-351

   v.                                    :

BRIAN M. DOYLE, et al.,                        JUDGE WALTER H. RICE

        Defendants.                   :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION TO DISMISS (DOC. #7); PLAINTIFF'S FOURTH CLAIM (MALICIOUS PROSECUTION UNDER STATE LAW), TENTH CLAIM (MALICIOUS PROSECUTION UNDER FEDERAL LAW), SEVENTH CLAIM AND ALL STATE LAW CLAIMS AGAINST DEFENDANT THE CITY OF HUBER HEIGHTS, AND THIRTEENTH CLAIM (PUNITIVE DAMAGES) ARE DISMISSED WITH PREJUDICE; PLAINTIFF'S FIRST CLAIM (ASSAULT), SECOND CLAIM (FALSE IMPRISONMENT), THIRD CLAIM (FALSE ARREST), FIFTH CLAIM (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS), SIXTH CLAIM (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS), EIGHTH CLAIM (UNLAWFUL SEIZURE), ELEVENTH CLAIM (DELIBERATE INDIFFERENCE), AND TWELFTH CLAIM (FAILURE TO TRAIN) ARE DISMISSED WITHOUT PREJUDICE; PLAINTIFF GRANTED LEAVE TO AMEND COMPLAINT WITHIN TWENTY (20) DAYS TO REPLEAD CLAIMS DISMISSED WITHOUT PREJUDICE, WITH NOTICE OF DEFENDANTS' INVOCATION OF QUALIFIED IMMUNITY AGAINST PLAINTIFF'S FEDERAL CLAIMS; ALL AMENDMENTS MUST TAKE INTO ACCOUNT THE STRICTURES OF RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

---

     Plaintiff Patsy J. Shoup ("Shoup" or "Plaintiff") filed suit against the City of

Huber Heights, Ohio ("City"), police officers Brian M. Doyle ("Officer Doyle"),

Shawn F. Waler ("Officer Waler"), Anthony W. Ashley ("Officer Ashley"), and firefighter/paramedics Clifford B. Koss ("Koss") and James N. Kuntz ("Kuntz") (collectively, "Defendants"), alleging deprivation of her constitutional rights under 42 U.S.C. § 1983 and various Ohio common law tort claims.  The Court has original jurisdiction over Shoup's federal claims pursuant to 28 U.S.C. § 1343(a)(3), which allows for the Court's supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367(a).

Pending before the Court is Defendants' Motion to Dismiss (Doc. #7), brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    FACTUAL AND PROCEDURAL HISTORY[1]

Plaintiff Shoup is a resident of Greene County, Ohio, and is employed by the Veteran's Administration in Dayton, Ohio.  On Friday, October 22, 2010, sometime after 4:00 p.m., Shoup left work and traveled to the home of her adult daughter, Carrie A. Sports ("Sports").  Sports lived in Huber Heights with her two children, a twelve year old daughter and a one year old son.

After Shoup arrived, while inside her daughter's house, a home invasion occurred.  Two males and one female, unknown to either Shoup or Sports, forced their way into Sports's house and violently assaulted both of them.  Shoup instructed her granddaughter to take the baby into the laundry room and hide. Sports was "pulled outside, beaten, kicked, and sexually assaulted by the

---

[1] All factual allegations are taken from Shoup's Amended Complaint (Doc. #2).

2

assailants," resulting in "visible injuries on her face, neck, and arms." Shoup herself was "beaten, kicked, and struck violently in the face by the assailants," which caused both "serious visible injuries to her face," as well as "traumatic brain injury, specifically, subarachnoid hemorrhage and cerebral concussion."

Shoup was able to call 911 during the ordeal, and neighbors called as well. Upon arrival, Officer Doyle was approached by Sports, who was visibly injured. Sports informed him that both she and her mother had been attacked. As Officer Doyle and Sports approached the house, Shoup emerged onto the porch holding Sports's baby son. Officer Doyle asked Shoup to hand the baby to a neighbor. Shoup, who did not know the neighbor and was afraid for her grandson's safety, did not want to hand him over.

Officer Doyle then "grabbed Plaintiff's arm, threw her to the ground and handcuffed her" before placing her in the back of a police car. He told her that she was "under arrest for obstructing justice." Shoup made repeated pleas to Officer Doyle to release her so that "she could go back and check on her daughter and grandchildren," but his only response was to "tell her she was going to be charged with a crime." Officer Doyle then left her in the cruiser, "unattended," and still in handcuffs. From where the car was parked, Shoup could not see any of the police officers. During this time, one of the assailants, who was armed with a gun, was still at large. Shoup states that she "was injured, very upset, could hardly breath [sic], and was terrified to be left alone in the cruiser."

3

After Officer Doyle returned, Shoup asked to be taken to the hospital. Koss and Kuntz, two firefighter/paramedics who had been dispatched to the scene, approached Officer Doyle's car and "looked at" Shoup while she was still inside. In front of Koss and Kuntz, Officer Doyle asked Shoup why should thought she needed to go to the hospital. Shoup, who was crying, had a lip split open, and felt a "terrible pressure on her chest," could not respond before Officer Doyle said: "See there, she can't even *think* of why she needs to go to the hospital." After Shoup stated that she needed to go to the hospital because of her "badly cut" mouth, Officer Doyle responded: "That's because *you got busted in the mouth*!" Shoup alleges that he had a "very belligerent and disrespectful" tone of voice when talking to her.

Koss and Kuntz completed an incident report stating the following: Shoup told them that several people had attacked her; she had been "punched in the jaw," and her jaw hurt; she "was very upset and crying almost hysterically;" after asking if she was okay, Shoup answered, three times, that she could not breathe; she had "dried blood around her lips;" she complained of chest pain and asked to go to the hospital "immediately;" and, in a statement that Shoup characterizes as an attempt "to ridicule" her, that she "was playing games with ems and police trying to get out of arrest." At this time, Shoup alleges that she was "experiencing a hypertensive crisis," because her blood pressure was 180/90. Koss and Kuntz left the scene without providing Shoup with medical care or taking her to the hospital.

4

Shoup was "eventually released"[2] and taken by her family to Kettering

Hospital.  There, she reported the injuries she had suffered, including being

punched and kicked in the head.  Shoup complained of dizziness, nausea, head

pain, and a loss of consciousness.  After concluding that Shoup had suffered a

concussion, a cerebral contusion, a contusion to her right shoulder, and a lacerated

lip, the physicians concluded that the "seriousness of her injuries" required her

transfer to the trauma center at Miami Valley Hospital.  There, her diagnosis was

augmented to include a contusion to her left chin and a subarachnoid hemorrhage.

After two days at Miami Valley Hospital, Shoup was discharged on October 24,

2010.

Shoup filed suit on October 21, 2011, in the Court of Common Pleas of

Montgomery County, Ohio, and originally alleged only state law claims against

Defendants.  Doc. #1.  After Shoup was granted leave to amend, she filed an

Amended Complaint on October 12, 2012, in which she also alleged violations of

her federal constitutional rights and sought recovery under 42 U.S.C. § 1983.

Pursuant to 28 U.S.C. § 1441, Defendants removed the case to this Court.

Shoup's Amended Complaint presents thirteen claims.  Doc. #2.  The first

seven allege claims under Ohio law, to wit:  assault and battery against Officer

Doyle (First Claim); false arrest against Officer Doyle (Second Claim); false

---

[2] Shoup states that she "was eventually released from police custody," but does
not state who released her, when, or from where.  Since the only custodial
situation she describes is being held in the back of the police cruiser, it is assumed
that she was released from there by Officer Doyle or another officer.

imprisonment against Officer Doyle (Third Claim); malicious prosecution against

Officer Doyle (Fourth Claim); intentional infliction of emotional distress against

Officers Doyle, Waler, and Ashley (Fifth Claim); intentional infliction of emotional

distress against Koss and Kuntz (Sixth Claim); and a claim against the City, stating

that it has a duty to indemnify Koss, Kuntz, and Officers Doyle, Waler, and Ashley

(Seventh Claim).

Shoup's remaining claims arise under 42 U.S.C. § 1983: a claim for

unlawful seizure against Officer Doyle (Eighth Claim); a claim of excessive force

against Officer Doyle (Ninth Claim); a claim for malicious prosecution against

Officer Doyle (Tenth Claim); a claim of deliberate indifference to her serious

medical needs against Doyle, Koss, and Kuntz (Eleventh Claim); a claim against the

City for failure to train Officer Doyle (Twelfth Claim); and a claim against Doyle,

Koss, and Kuntz for punitive damages (Thirteenth Claim).

Defendants filed a Motion to Dismiss on November 10, 2012, arguing that

Shoup's claims, as stated, fail to establish any constitutional violation against her

and cannot overcome the qualified immunity defense to which Defendants are

entitled. Doc. #7. Shoup filed a Memorandum in Opposition to Defendants'

Motion to Dismiss (Doc. #16) on December 21, 2012, and Defendants filed a

Reply Memorandum in Support of Their Motion to Dismiss (Doc. #17) on January

7, 2013.

## II.   STANDARD OF REVIEW - MOTION TO DISMISS

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief" to satisfy the pleading standard of the federal courts.  "Specific facts are not necessary," as the statement need only provide the defendant fair notice of the nature of the claim and upon what grounds it rests.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Nevertheless, Rule 8(a)(2) "imposes both legal *and* factual demands on the authors of complaints."  *16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, --- F.3d ----, No. 12–2620, 2013 WL 4081909 (6th Cir. Aug. 14, 2013) (citing *Twombly*, 550 U.S. 544 and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  Thus, a plaintiff must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing.  The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."  *Id.* (citing *Twombly*, 550 U.S. at 567 and *Iqbal*, 556 U.S. at 683, 678).

A complaint that fails to meet the pleading requirement of Rule 8(a)(2) is vulnerable to dismissal for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6).  The party moving for dismissal under Rule 12(b)(6) bears the burden of showing that the non-moving party's pleading has failed to adequately state a claim for relief.  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)).  The

7

Rule 12(b)(6) analysis requires a court to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F. 3d at 476); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In accordance with the requirements of Rule 8(a)(2), the plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss under Rule 12(b)(6). *Twombly*, 550 U.S. at 570. "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). Unless the facts as alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III.  <u>ANALYSIS</u>

Although Shoup's Amended Complaint pleads her state law claims (Claims One through Seven) before her federal claims (Claims Eight through Thirteen), the Court will first consider her federal law claims before moving to an analysis of her state law claims.

8

A. **Shoup's Federal Claims under 42 U.S.C. § 1983**

Defendants argue that Shoup's case should be dismissed because her claims fail as a matter of law and because the doctrine of qualified immunity applies. "Dismissals on the basis of qualified immunity are generally made pursuant [to] summary judgment motions, not 12(b)(6) sufficiency of pleadings motions." *Grose v. Caruso*, 284 F. App'x 279, 283 (6th Cir. 2008) (citations omitted). Nevertheless, "this circuit permits a reviewing court to dismiss under Fed.R.Civ.P. 12(b)(6) based on qualified immunity." *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) (citing *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir.1987)). Thus, two issues arise. The first issue is whether Shoup has stated viable claims, which the Court may answer by applying the familiar 12(b)(6) standards of construing her Amended Complaint in a light favorable to her, assuming the truth of all facts therein, and drawing any reasonable inferences in her favor. *Handy-Clay*, 695 F.3d at 538. Furthermore, "[q]ualified immunity is an affirmative defense, and a plaintiff does not need to anticipate it to state a claim." *Jackson v. Schultz*, 429 F.3d at 589. In other words, there is no heightened pleading standard for claims brought under Section 1983. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166-67 (1993). *Iqbal*, which concerned a *Bivens* action, the "federal [actor] analog" to a Section 1983 action, located the "plausibility" requirement within the scope of Rule 8's pleading requirements and tested the sufficiency of the plaintiff's complaint accordingly. 556 U.S. 662, 675 (citing *Hartman v. Moore*, 547 U.S. 250, 254 n.2). Thus, the

9

"liberal notice pleading standards" still apply, and the plaintiff is only required to meet the "plausibility" gloss on the notice pleading standard described by the Supreme Court in *Twombly* and *Iqbal*. *See supra* Section II. Defendants, therefore, still have the burden of demonstrating that Shoup has failed to allege facts that plausibly suggest that she was deprived of a federally protected right, privilege or immunity by actions that Defendants took under color of state law. 42 U.S.C. § 1983.

Defendants' qualified immunity challenge, however, raises the second issue, because it imposes a burden on Shoup beyond simply stating a viable claim under Section 1983. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity test is often formulated as a two-part test, requiring a court to decide both "whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right," as well as "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). Thus, even if Shoup states a viable Section 1983 claim, she must, in addition, demonstrate that the constitutional rights were "clearly established" at the time of the alleged violation to survive Defendants'

10

qualified immunity challenge. *See Jackson*, 429 F.3d at 589 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) and stating that "once the [defendants] raise qualified immunity, Jackson must plead the violation of a clearly established constitutional right")).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court created a mandatory procedure for deciding whether a defendant is entitled to qualified immunity: a court must always consider *first* whether the plaintiff has alleged that the state actor's conduct violated a constitutional right, *before* asking whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. However, in *Pearson*, the Supreme Court retreated from *Saucier*'s "inflexible procedure," concluding that courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. at 234. Nevertheless, the Supreme Court "continue[d] to recognize that it is often beneficial" to perform the analysis in the order previously required by *Saucier*. *Id*. For example, "[i]n some cases, a discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all." *Id.* The foregoing justification seems particularly appropriate for retaining the *Saucier*'s order when, as here, the defendant challenges the sufficiency of a plaintiff's Section 1983 claim with a motion to dismiss for failure to state a claim upon which relief may be granted brought under Rule 12(b)(6).

11

Furthermore, as articulated by the Supreme Court in *Pearson*, the Rule 12(b)(6)

analysis is basically collapsed into the first part of the qualified immunity inquiry

anyway, as it asks "whether the facts that a plaintiff has alleged (see Fed. Rules

Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a

constitutional right," in the first place. 555 U.S. at 232. For these reasons, the

Court will analyze each of Shoup's claims by first examining whether the facts,

viewed as Shoup alleges them and in her favor, are sufficient to state a claim for a

violation of a particular constitutional right. If she has not, the claim fails as a

matter of law, and is subject to dismissal under Rule 12(b)(6). If she has

sufficiently alleged a violation of a constitutional right, the Court will then

determine whether the right in question was clearly established at the time of the

alleged violation, such that a reasonable officer should have known of the

violation, in order to answer the question of qualified immunity on each of her

federal claims.

### 1. *Unlawful seizure claim against Officer Doyle (Eighth Claim)*

Shoup claims that because Officer Doyle lacked probable cause to justify

detaining her in the back of his cruiser, his actions amounted to an unreasonable

seizure, in violation of the Fourth and Fourteenth Amendments.[3] Doc. #2 at 10.

Defendants argue that Officer Doyle's detention of Shoup was not unreasonable,

---

[3] The Fourth Amendment's right to be free of unreasonable searches and seizures applies to state action by virtue of incorporation through Due Process clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 660 (1961); *Ker v. California*, 374 U.S. 23, 30 (1963).

and provide two alternate justifications: either the seizure was an objectively reasonable exercise of Officer Doyle's duties as a community caretaker, or the seizure was a reasonable investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968). Doc. #7 at 12-16.

Shoup's unlawful seizure claim arises under the Fourth Amendment, which protects a person's right to be free from "unreasonable searches and seizures," those unsupported by a warrant or probable cause. U.S. Const. amend. IV. "A person is seized by the police and thus entitled to challenge the government action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement." *United States v. McCauley*, 548 F.3d 440, 443 (6th Cir. 2008) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)). A seizure occurs if an examination of all the surrounding circumstances shows that "a reasonable person would have believed that he was not free to leave." *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Here, the parties do not dispute that the facts adequately allege that a seizure occurred when Officer Doyle restrained Shoup's freedom of movement by grabbing her arm, handcuffing her, and placing her in the back of his squad car. The question is whether the seizure itself (not the manner in which it was accomplished, i.e., by throwing her to the ground), was reasonable under the Fourth Amendment.

A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment. U.S. Const. amend. IV; *United States v. Jones*, 562 F. 3d 768, 772 (6th Cir. 2009). "Nevertheless, because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (citations omitted). "Lists of recognized exceptions are inclusive rather than exclusive." *Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010). Among the most familiar exceptions are exigent circumstances, which "arise when an emergency situation demands immediate police action that excuses the need for a warrant." *Id.* (citations omitted). The Sixth Circuit has "repeatedly recognized four situations that may rise to the level of exigency," including: "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others." *Id.* (citing *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir.2003)).

Defendants argue that Officer Doyle's seizure of Shoup falls under the "community-caretaking" exception to the prohibitions of the Fourth Amendment. That exception "applies only to actions that are 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *United States v. Williams*, 354 F.3d 497, 508 (6th Cir. 2003) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). The community-caretaking function of the police may come into play when there is a risk of danger to the police or others, and may, therefore, be properly classified as an example of

14

exigent circumstances. *See Zeigler v. Aukerman*, 512 F.3d 777, 785 (6th Cir. 2008) (recognizing that the risk of danger "exigency has been most frequently applied in cases where the government actors were performing 'community-caretaker' functions rather than traditional law-enforcement functions").

The Supreme Court recognizes that "[o]ne exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Brigham City,* 547 U.S. at 405. In *Brigham City,* police outside a house saw a juvenile strike an adult through a kitchen window, which provided "an objectively reasonable basis for believing both that the injured adult might need help and that the violence in the kitchen was just beginning." *Id.* at 405. Under such circumstances, a warrantless entry does not violate the Fourth Amendment. *Id.* at 406.

*Brigham City* also affirms the principle that the actions of law enforcement must be evaluated under a standard of objective reasonableness. *Id.* at 405-06. Thus, "regardless of the individual officer's state of mind" or the "subjective motivation" that the officer harbors, if the actions that he or she takes are objectively reasonable under the circumstances, they are reasonable under the Fourth Amendment. *Id.* (citing and quoting *Scott v. United States*, 436 U.S. 128, 138 (1978) and *Bond v. United States*, 529 U.S. 334, 338 n.2 (2000)). The Sixth Circuit has expressly associated the exigency described in *Brigham City* with the community-caretaking function of law enforcement. *See Zeigler v. Aukerman*, 512

15

F.3d 777 (6th Cir. 2008); *United States v. Washington*, 573 F.3d 279, 287 (6th Cir. 2009).

The community-caretaking function usually arises in the context of a warrantless entry or search. *E.g.*, *United States v. Rohrig*, 98 F.3d 1506 (6th Cir. 1996) (recognizing that loud music emanating from home justified warrantless entry in order for law enforcement to perform community-caretaking function due to ongoing nuisance). However, exigent circumstances may also require the warrantless seizure of a person in order to accomplish the community-caretaking function of law enforcement. *United States v. Brown*, 447 F. App'x 706 (6th Cir. 2012). In *Brown*, after a minor was reported missing, police stopped and questioned a defendant who was the last person to have seen the missing minor. The defendant later challenged the seizure, which was found to have been consensual. However, the Sixth Circuit emphasized that, even if the stop had been non-consensual, it would have been a justified as a community-caretaking function of the police. The officer in *Brown* was "responding to a distress call rather than investigating a crime complaint," and the Sixth Circuit noted that even a non-consensual stop would be justified if it "would permit an officer to stop a key eyewitness when prompt inquiry may assist in finding the minor before he [came] to harm." *Id.* at 709-710. "No Fourth Amendment violation results when an immediate caretaking interest justifiably compels an officer's intrusions." *Id.* at 710.

*Brown* appears to be the sole occasion on which the Sixth Circuit has recognized that the community-caretaking function of the police may justify a warrantless seizure.  Opinions of other Circuit Courts of Appeals, however, provide further examples of the application of the community-caretaking function to warrantless arrests.[4]  The Eighth Circuit addressed the issue in *Winters v. Adams*, 254 F.3d 758 (8th Cir. 2001), holding that officers properly exercised their role as community caretakers when they detained a "highly agitated" and "potentially intoxicated" man who refused to exit a locked, parked car in order to prevent him from driving away and possibly harming himself or others.

Furthermore, in *United States v. Garner*, 416 F.4d 1208 (10th Cir. 2005), a police officer responded to reports of a man seen unconscious and slumped over. After locating him, the man attempted to leave, and the officer directed the man to return so that he could be examined by medical personnel. The Tenth Circuit recognized that the officer "had reasonable grounds to conclude that [the man] might be in need of medical assistance," and therefore held that he properly exercised his role as community caretaker when he briefly detained the man. *Id.* at 1214. *See also Gupta v. Crane*, No.1:09-cv-573, 2010 WL 775222 (W.D. Mich. Feb. 26, 2010) ("Under the community-caretaker exception, it was eminently

---

[4] Ohio courts also recognize that the community-caretaker exception to the Fourth Amendment's warrant requirement may justify seizure of a person. *E.g.*, *State v. Dunn*, 964 N.E. 2d 1037, 2012-Ohio-1008 (Ohio 2012) (applying exception to police seizure of suicidal man); *State v. Engle*, No. 25226, 2013-Ohio-1818, 2013 WL 1870544 (Ohio Ct. App. May 3, 2013) (community-caretaking function justified seizure of injured, bleeding man to determine need for immediate medical attention).

reasonable for Defendants to stop and question" the stumbling, possibly intoxicated plaintiff "in order to determine whether he was in need of assistance or posed a danger to himself or others").

Here, Officer Doyle's actions must be examined in light of what actions were objectively reasonable for a law enforcement officer in the role of a community caretaker to take under the circumstances. *Brigham City,* 547 U.S. at 405-06. So examined, Shoup fails to state a plausible, as opposed to merely possible, Fourth Amendment violation. According to Shoup, Officer Doyle threw her to the ground and handcuffed her immediately after she refused to hand the baby to a neighbor. If Shoup's refusal were the only cause for the seizure, she would undoubtedly state a plausible Fourth Amendment violation. However, the seizure cannot be divorced from all of the circumstances surrounding it, which, as Shoup describes them, present Officer Doyle arriving at and dealing with a fluid and dangerous situation. As in *Brown,* the officer was responding to a distress call, not conducting an investigation. 447 F. App'x at 710. According to Shoup, Officer Doyle arrived on the scene and encountered Sports, who had just been "pulled outside, beaten, kicked and sexually assaulted." Sports informed Officer Doyle that her mother had also been assaulted. Officer Doyle and Sports approached the house, and Shoup emerged holding Sports's baby. Shoup refused his request to hand the baby to a neighbor, and he then "threw her to the ground and handcuffed her" before putting her in the back of his police car. The crucial fact overhanging the encounter, however, is Shoup's allegation that, *during this*

18

*entire time*, "one of the assailants, who was believed to have a gun, was still at large." Although the Court views all facts in a light favorable to Shoup and draws all inferences in her favor, that standard does not allow the Court to ignore a fact, alleged by her, that makes Officer Doyle's actions appear objectively reasonable. When he arrived, an armed assailant was still at large, and the possibility of violence to Shoup, Sports, Sports's children, and Officer Doyle remained real. Shoup, who was injured and traumatized, was understandably not communicating or acting rationally, but Officer Doyle needed to secure a tense and dangerous situation. Under these circumstances, it was objectively reasonable to seize Shoup in order to prevent further harm to her or anyone else.[5]

Furthermore, it was objectively reasonable for Officer Doyle to temporarily detain Shoup in order for her to be examined by the paramedics. Shoup was visibly injured and in need of medical treatment, but refusing to cooperate with Officer Doyle. Furthermore, firefighter/paramedics Koss and Kuntz came to examine Shoup while she was in Officer Doyle's custody. That allegation also supports Defendants' argument that her seizure was objectively reasonable under the circumstances.

In response to Defendant's argument that the seizure was justified by the community-caretaking function of law enforcement, Shoup argues that her complaint makes no allegations that she herself "presented a risk of danger to the

---

[5] The objective reasonableness of the fact of the seizure is a separate inquiry from the manner in which the seizure was accomplished, which is addressed by Shoup's excessive force claim. *See infra*, Section III.A.2.

police or others[,] and therefore the exigency exception is inapplicable." Doc. #16

at 10. Shoup's premise, for which she cites no case law in support, is that such a

seizure is only justified if the person seized creates the risk of danger to which the

community caretaker responds. It may often be the case that, as with an

intoxicated person, it is the seized person who creates a risk of danger. *E.g.*,

*Winters*, 254 F.3d 758 (8th Cir. 2001) (community-caretaking function justified

seizure to prevent intoxicated, erratic man from driving car and harming himself or

others). However, Shoup's argument would place an artificial restriction on the

community-caretaking function itself and the ability of law enforcement to

effectively respond to exigencies. In *Brown*, for example, there was no indication

that the defendant was responsible for the missing juvenile, and locating the

juvenile was the reason for the application of the community-caretaker exception

that justified the seizure. 447 F. App'x 706.

Although the Court agrees with Defendants that Shoup's allegations

describe an objectively reasonable exercise of Officer Doyle's duties as a

community caretaker, the Court cannot agree with their argument that the facts as

alleged provided reasonable suspicion to justify Shoup's seizure as a "stop" under

*Terry v. Ohio*, 392 U.S. 1 (1968). *Terry* makes it clear that "whenever a police

officer accosts an individual and restrains his freedom to walk away, he has

'seized' that person," and the action must be justified under the reasonableness

standard of the Fourth Amendment. *Id.* This standard allows that "a police officer

may in appropriate circumstances and in an appropriate manner approach a person

20

for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Id*. at 22. However, "[i]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the seizure that the officer effects, without a warrant based on probable cause. *Id*. at 21; *see Feathers v. Aey*, 319 F.3d 843, 848-89 (6th Cir. 2003) (characterizing *Terry*'s reasonable suspicion inquiry as "whether, at the moment that they initiated the stop, the totality of the circumstances provided the officers with the reasonable suspicion required in order to detain a citizen").

Defendants argue that when Officer Doyle seized Shoup, her behavior provided reasonable suspicion that Shoup was "hindering, or at least potentially about to hinder, Officer Doyle's investigation of the crime, thus justifying at least [a] brief investigatory stop if not a full[-]fledged arrest." Doc. #7 at 16. According to Defendants, there was reasonable suspicion to believe that Shoup was about to violate either Ohio Rev. Code § 2921.31, which prohibits the obstruction of official business, or Ohio Rev. Code § 2921.32, which prohibits the obstruction of justice.

However, there were no facts from which to infer that Shoup harbored the specific intent that is an element of either offense. Ohio Rev. Code § 2921.31 states that "[n]o person, without privilege to do so and *with purpose to prevent, obstruct, or delay* the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." (emphasis

21

added).  Similarly, Ohio Rev. Code § 2921.32 states that "[n]o person, *with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment* of another for crime" shall commit any of a series of actions – the only one possibly applicable here being to "[p]revent or obstruct any person, by means of force, intimidation, or deception, from performing any act to aid in the discovery, apprehension, or prosecution of the other person or child."

The statute also defines "purposely," as used for either offense:  "A person acts purposely when it is his specific intention to cause a certain result . . . ." Ohio Rev. Code § 2901.22(A).  Thus, Officer Doyle must have had reasonable suspicion to believe that Shoup had the specific intent to prevent, obstruct, or delay his duties, or the specific intent to hinder the discovery or apprehension of the persons who had assaulted her and her daughter.  There was no basis for believing that Shoup had the specific intent to impede his investigation or duties, based only on her act of refusing to hand a baby to a neighbor.  If anything, her refusal to relinquish the baby negligently hindered the performance of Officer Doyle's duties, or negligently hindered the apprehension of the assailants, due to Shoup's "fail[ure] to perceive or avoid a risk that [her] conduct may cause a certain result or may be of a certain nature."  Ohio Rev. Code § 2901.22(D) (defining culpable mental state of negligence).  However, both offenses require purposeful intent, not mere negligence.

Furthermore, both the Ohio cases that Defendants cite make it clear that the element of purposeful intent applies.  Doc. #7 at 16.  In *N. Ridgeville v.*

22

*Reichbaum*, 677 N.E.2d 1245, 1246 (Ohio Ct. App. 1996), the defendant "repeatedly interrupted" officers trying to question his stepdaughter, told the officers that they did not have the right to be on his property, refused to provide identification, and yelled at the officers.  These actions were sufficient to "conclude that the defendant had acted with purpose to impede the officers' investigation of the disturbance complaint." *Id.* at 1249.  In *State v. Fort*, 2003-Ohio-1075, 2003 WL 930487, (Ohio Ct. App. March 7, 2003), a defendant was convicted of obstructing official business after he noticed officers conducting a traffic stop in front of a friend's house, interrupted them, yelled at them to ask "what was going on," refused to leave when requested, "continued to inquire," and refused to provide identification when finally asked.  The Ohio Court of Appeals upheld his conviction for obstructing official business, citing its requirement of specific intent to commit the offense. *Id.* at *3-4.  Here, even allowing that Officer Doyle's reasonable suspicion did not have to amount to probable cause, Shoup's action of refusing to hand a baby to a neighbor is the only specific, articulable fact that Shoup alleges occurred before Officer Doyle seized her.  That act provides no support for suspecting that she purposely intended to impede or obstruct his duties or investigation.  Furthermore, Shoup alleges that the Officer knew that Shoup herself was the victim of the crime that had just occurred, making it more improbable he would suspect that she wished to impede the apprehension of the assailants.  Accordingly, the Court rejects Defendants' contention that Shoup's seizure was a reasonable investigatory stop under *Terry*.

Nevertheless, even construing the facts in Shoup's favor, the Court cannot conclude that Officer Doyle's actions were objectively unreasonable, in light of the community-caretaking function that he was performing. This removes Shoup's seizure from the protections of the Fourth Amendment. Shoup's unlawful seizure claim fails to state a constitutional claim, and therefore fails at the first prong of the qualified immunity analysis.

"Although a district court should give plaintiffs an opportunity to amend a complaint once a qualified immunity defense is raised, plaintiffs cannot overcome a motion to dismiss on qualified immunity grounds unless they allege facts necessary to show that a defendant has violated their constitutional rights." *Cooper v. Parrish*, 203 F. 3d 937, 951 (6th Cir. 2000). Because Shoup's previous amendment to her complaint occurred in state court, before Defendants had raised their defense of qualified immunity, the Court DISMISSES her unlawful seizure claim without prejudice, with leave to amend her complaint in accordance with *Cooper*, provided that her Seconded Amended Complaint be filed no later than twenty (20) days from date, and, additionally, complies with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

### 2. *Excessive force claim against Officer Doyle (Ninth Claim)*

The Fourth Amendment's "reasonableness" standard applies to "*all*" claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen."

24

*Graham v. Connor*, 490 U.S. 386, 395 (1989); *Schreiber v. Moe*, 596 F.3d 323

(6th Cir. 2010). "A claim of excessive force under the Fourth Amendment

requires that a plaintiff demonstrate that a seizure occurred, and that the force

used in effecting the seizure was objectively unreasonable." *Rodriguez v.*

*Passinault*, 637 F.3d 675, 680 (6th Cir. 2011) (citing *Graham*, 490 U.S. at 394–

95). As stated previously, there is no doubt that Shoup has alleged a seizure by

Officer Doyle, based on her allegations of being handcuffed and placed in the back

of his cruiser. The question, therefore, is whether Shoup has plausibly stated that

the force Officer Doyle employed, i.e., grabbing her arm and throwing her to the

ground in the process of seizing her, was objectively unreasonable under the

circumstances.

　　The objective reasonableness standard in an excessive force claim "depends

on the facts and circumstances of each case viewed from the perspective of a

reasonable officer on the scene and not with 20/20 hindsight." *Binay v.*

*Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010) (quoting *Fox v. DeSoto*, 489 F.3d

227, 236 (6th Cir. 2007)). "The calculus of reasonableness must embody

allowance for the fact that police officers are often forced to make split-second

judgments—in circumstances that are tense, uncertain, and rapidly evolving—about

the amount of force that is necessary in a particular situation." *Graham*, 490 U.S.

at 396-97. When analyzing an excessive force claim, a court must pay "careful

attention to the facts and circumstances of each particular case, including the

severity of the crime at issue, whether the suspect poses an immediate threat to

the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The totality of the circumstances must demonstrate that the amount of force applied was objectively reasonable. *Id.*

The Court believes that Shoup has plausibly stated a claim that Officer Doyle used an objectively unreasonable amount of force to accomplish a seizure that was otherwise justifiable as a community-caretaking action. According to Shoup, after she refused to hand the baby to a neighbor, Officer Doyle grabbed her arm, threw her to the ground, and handcuffed her before placing her in the back of his squad car. Even if a temporary detention was necessary for Officer Doyle to secure the scene, and to secure Shoup for examination by medical personnel, there are no facts alleged that suggest that Shoup was physically resistant to him, or that she posed a threat to anyone's safety. Furthermore, Shoup's daughter had just informed Officer Doyle that Shoup had been assaulted, and she was visibly injured when she appeared with the baby. The Court recognizes that Officer Doyle, who had just arrived at the scene of a home invasion, was forced to make split second decisions in a tense, rapidly evolving situation. Shoup may, therefore, have minimally aggravated Officer Doyle's ability to deal with that situation by refusing to hand the baby to the neighbor. However, construing the facts as alleged in her favor, the response of grabbing her arm, throwing her to the ground, and handcuffing her appears disproportionate where there was no indication of resistance or physical threat from her. Shoup has alleged sufficient facts to state a

26

plausible claim for the excessive use of force against her, because it is a plausibly excessive use of force to throw an injured victim of violent crime to the ground and handcuff her, even if her temporary seizure was necessary to prevent harm to her and others.

Defendants argue that Shoup's excessive use of force claim fails because Shoup "does not allege that an extraordinary amount of force was used against her" and that the "minimal" amount of force employed was justified because "there was an objectively reasonable basis for seizing her." Doc. #7. However, there is no requirement that an excessive use of force claim allege an extraordinary amount of force. *E.g.*, *Homes v. City of Massillon*, 78 F.3d 1041, 1048 (6th Cir. 1996) (recognizing that excessive force claim need not be "life threatening" or even "leave extensive marks in order for the amount of force used . . . to be considered excessive"). Rather, the question is what is objectively reasonable under the circumstances. *Graham*, 490 U.S. at 396. Here, the objectively reasonable explanation for the seizure was an exercise of Officer Doyle's responsibilities as community caretaker, and the person seized presented no threat to the officer. *Harrison v. City of Dickson*, No. 3:11–cv–01044, 2013 WL 1482950 (M.D. Tenn. Apr. 11, 2013), provides an example of a court's rejection of a defendant's assertion that force was justified in a similar situation. In *Harrison,* an officer struck an injured man in the face at an accident scene while trying to obtain a closed pocketknife from the man. The district court overruled the defendants' motion for summary judgment on a claim of excessive force,

27

finding that the government's interest in securing the accident site could not justify the use of force where the subject was injured, not suspected of a crime, and posed no threat to the officer. *Id.* at *9. Like the plaintiff in *Harrison*, Shoup was injured and posed no threat to the officer when force was employed. The Court has rejected the Defendants' argument that Officer Doyle had reasonable suspicion to believe that Shoup was obstructing justice, but even if there were, the force alleged was disproportionate to the offense. Furthermore, unlike the *Harrison* plaintiff, Shoup held no weapon, but only a baby. The Court concludes that the facts as alleged describe a plausible claim for Officer Doyle's excessive use of force against Shoup.

Furthermore, Officer Doyle is not entitled to qualified immunity on Shoup's claim of excessive force. In the Sixth Circuit, "the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest" is clearly established. *Baker v. City of Hamilton*, 471 F.3d 601, 608 (6th Cir. 2006) (citing *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 688 (6th Cir. 2006)).

Accordingly, the Court OVERRULES Defendant's Motion to Dismiss as to Shoup's claim of excessive force against Officer Doyle.

### 3. *Malicious prosecution under federal law against Officer Doyle (Tenth Claim)*

Defendants argue that Shoup fails to allege the facts supporting the elements of a federal claim for malicious prosecution under the Fourth Amendment.

28

Doc. #7 at 17-18. The elements of a Fourth Amendment malicious prosecution claim are:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second . . . the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty . . . apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (citations and quotations omitted). Here, Shoup's Amended Complaint does not mention a criminal prosecution that was initiated against her, a deprivation of liberty apart from her time in Officer Doyle's car, or that any criminal proceeding was resolved in her favor.

Furthermore, Shoup, in her Memorandum in Opposition to Defendants' Motion to Dismiss, fails to defend this claim, and omits any mention of it from the list of federal claims that she argues are stated in her Amended Complaint. Doc. #16 at 7-8. Thus, the Court considers her Fourth Amendment malicious prosecution claim to be abandoned. *See*, *e.g.*, *Scott v. Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (stating that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"); *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 790 n.2 (E.D. Mich. 2010) (stating that "Plaintiff has not responded to Defendant's motion to dismiss this claim, and the Court assumes

he concedes this point and abandons the claim"). Accordingly, the Court will DISMISS WITH PREJUDICE Shoup's claim for malicious prosecution under federal law, the Tenth Claim of her Amended Complaint.

### 4. *Deliberate indifference to her serious medical needs against Doyle, Koss, and Kuntz (Eleventh Claim)*

Shoup's Eleventh Claim asserts that Officer Doyle and firefighter/paramedics Koss and Kuntz were deliberately indifferent to her serious medical needs during her detention in the back of Officer Doyle's car, in violation of her Due Process rights under the Fourteenth Amendment. Doc. #2 at 12. Defendants argue that Shoup fails to state a claim upon which relief may be granted, because the Due Process clause does not impose an affirmative duty to protect its citizens against acts of violence by third parties, such as the injury that resulted from the assault Shoup suffered. Doc. #7 at 18. Even if the Defendants did owe Shoup a duty to provide medical care, Defendants argue, the facts fail to allege that Officer Doyle, Koss or Kuntz either knew of her brain injury or ignored it in a way that could support a claim of deliberate indifference to a known medical need. *Id.* at 19, 21-23. In response, Shoup argues that her need for medical treatment was obvious for anyone to recognize, even a lay person, and that Koss and Kuntz should be "held to a higher level of responsibility to recognize medical needs and risks because of their training as EMTs." Doc. #16 at 15.

Defendants' first argument, which argues that they had no duty to provide medical care for an injury arising from an act of violence by a private citizen, does

not accurately address the factual basis for Shoup's claim. Defendants are correct that the state has no affirmative constitutional duty to "protect an individual against private violence" perpetrated by other citizens. *DeShaney v. Winnebago Cnty. Dept. of Social Servs.*, 489 U.S. 189, 197 (1989). However, Shoup does not allege that Officer Doyle, Koss, or Kuntz failed to prevent the assailants from attacking her in the first place. Rather, she alleges that their failure to provide medical care arose after her seizure, "[w]hile she was in custody," at which point the protections of the Due Process Clause have attached. Doc. #2 at 12; *see DeShaney*, 489 U.S. at 200 (holding that "it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, *or other similar restraint of personal liberty*—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause") (emphasis added). In *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 603 n.3 (6th Cir. 2005), the Sixth Circuit rejected the argument that the village police officers who had not arrested a detainee, but merely "agreed to lock [him] in their cruiser" at the request of city police officers, owed him no constitutional duty. By placing him in their cruiser, the village police "maintained exclusive control and possession" of the detainee, and therefore "had custody of [him] – at least during the time that he was locked in their cruiser – thereby creating a constitutional duty to provide him with adequate medical care." *Id.* Thus, once Officer Doyle seized Shoup, the constitutional protections afforded a

pretrial detainee attached for the duration of her confinement in his cruiser, however limited its duration.

"Under the Fourteenth Amendment Due Process Clause . . . pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001) (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  In order to state a viable Section 1983 claim for failure to provide medical treatment, the "plaintiff must establish that the defendants acted with 'deliberate indifference to serious medical needs.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  Such a claim has both a subjective and an objective component. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Under the subjective prong, the plaintiff must allege facts showing that the officer had "a sufficiently culpable state of mind" when denying medical care. *Id.* (citing *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). A culpable state of mind requires something more than mere negligence, yet less than acts or omissions undertaken with the specific purpose to cause harm. *Farmer v. Brennan*, 511 U.S. 825, 836 (1970).  The standard lies somewhere in between: "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the [detainee], that he did in fact draw the inference, and that he then disregarded that risk."

32

*Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837).

In *Cain v. Irvin*, 286 F. App'x 920, 927 (6th Cir. 2008), the Sixth Circuit upheld a district court's ruling that the plaintiff had satisfied the subjective prong of a deliberate indifference claim by alleging that she informed the officer that "she was in great pain and wished to go to the hospital," and the officer "refused this request" and "mocked and insulted her."  Here, too, Shoup alleges that, while in the back of Officer Doyle's cruiser, she "repeatedly asked to be taken to the hospital," and that he mocked her requests.  Shoup does not allege that Officer Doyle explicitly refused to allow her to go to the hospital, and she does allege that the paramedics "came and looked at her" while she was in Officer Doyle's custody.  Doc. #2 at 5.  However, Officer Doyle knew that she wanted to go to the hospital for treatment, based on Shoup's requests, and he nevertheless continued to hold her there.  Thus, the Court must draw the inference in her favor that he deliberately prevented her from going to the hospital. Furthermore, by alleging that Officer Doyle knew that she had just been "beaten, kicked, and struck violently in the face," she has alleged facts which, if true, would show that he subjectively perceived facts from which to infer a substantial risk of harm beyond a mere split lip, and that he still prevented her from going to the hospital.  The Court will construe the allegations in Shoup's favor, and, following *Cain*, find that her requests to go to the hospital and Officer Doyle's responses and failure to allow

33

her to go allege facts that plausibly satisfy the subjective prong of a deliberate indifference claim.

The objective component of a detainee's claim for denial of medical care "requires the existence of a 'sufficiently serious' medical need." *Id.* (citing *Farmer*, 511 U.S. at 834 and *Estelle*, 429 U.S. at 104)). The analysis requires "a two part inquiry" to determine whether the objective component is met. *Cain v. Irvin*, 286 F. App'x 920, 927 (6th Cir. 2008). First, a sufficiently serious medical need may be demonstrated by "facts [that] show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004). If the need for medical treatment is obvious, "then the court must determine whether the delay in securing that care was reasonable." *Cain*, 286 F. App'x at 927 (citing *Blackmore*, 390 F.3d at 899-900). Second, where "the injury is not apparent or relatively minor . . . [the] plaintiff must provide 'medical evidence' demonstrating that the delay in treatment resulted in additional injury." *Id.* (citing *Napier v. Madison Cnty.*, 238 F.3d 739 (6th Cir.2001)).

Here, Shoup has failed to allege facts that satisfy the objective component of the claim against Officer Doyle. The Court does not agree with Defendants' characterization of Shoup's alleged, readily discernible injuries as consisting of "only visible wounds [such as] a lacerated left lip that required only a simple repair and a bruise on her left chin." Doc. #7 at 19-20. Shoup alleged that her daughter informed Officer Doyle that she had been assaulted, and alleged that she had been

34

struck violently in the face.  Construing the facts in her favor, a layman would have recognized that Shoup required medical treatment, and that she had a potential head injury from the assault.  Nevertheless, the Court cannot conclude from Shoup's allegations that the delay in treatment was "unreasonable," as required to state a claim of deliberate indifference to serious medical needs. *Blackmore*, 390 F.3d at 899-900.  Shoup's complaint does not allege how long she spent in custody, only that she was "eventually released and was taken to Kettering Hospital by her family."  Doc. #2 at 6.  The allegation suggests that she was taken to the hospital for treatment right after being released from the back of Officer Doyle's car.  Thus, the Court is unable to conclude that the delay attributable to her time in Officer Doyle's car was unreasonable.

Furthermore, Shoup has not alleged that any additional injury resulted from the delay.  She has not alleged that the delay made her concussion worse, or that she has medical evidence to suggest that it did.  Her alleged injuries all appear to have been caused exclusively by the assault.  Thus, the Court cannot conclude that Shoup has plausibly stated a claim that satisfies objective prong of her Fourth Amendment claim against Officer Doyle for deliberate indifference to her serious medical needs.  Because she has failed to state a claim against Officer Doyle for deliberate indifference to her serious medical needs, the second prong of the qualified immunity analysis is not required.

For the same reasons, the Court concludes that Shoup has failed to state a claim for deliberate indifference to her serious medical needs against paramedics

35

Koss and Kuntz.  The Court does not reach the subjective prong of such a complaint, because Shoup's failure to allege facts suggesting that the delay in treatment she suffered was unreasonable fails the objective prong of her claim against them, as with her claim against Officer Doyle.

Accordingly, the Court will SUSTAIN Defendants' Motion to Dismiss, as it pertains to her claim of deliberate indifference to serious medical need against Officer Doyle, Koss, and Kuntz.  The Court DISMISSES said claim without prejudice and, in accordance with *Cooper v. Parrish*, 203 F. 3d 937, 951 (6th Cir. 2000), grants Shoup leave to amend her complaint to remedy its insufficiency, with notice of Defendants' qualified immunity challenge, provided that her Seconded Amended Complaint be filed no later than twenty (20) days from date and, additionally, complies with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

### 5.  *Failure to train Officer Doyle against the City (Twelfth Claim)*

Local governments, such as municipalities and counties, are considered "persons" under 42 U.S.C. § 1983. *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 694 (1978); *Alkire v. Irving*, 330 F.3d 802, 814 (6th Cir. 2003). However, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents" on a theory of vicarious liability. *Monell*, 436 U.S. at 694.  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

36

said to represent official policy, inflicts the injury that the government as an entity

is responsible under § 1983." *Id.*  Thus, a municipality may be held liable in a

Section 1983 action for a violation of constitutional rights directly caused by its

failure to train municipal employees, including its police officers, resulting from its

official policy or custom. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 380

(1989).

　　"The inadequacy of police training only serves as a basis for § 1983 liability

'where the failure to train amounts to deliberate indifference to the rights of

persons with whom the police come into contact.'" *Slusher v. Carson*, 540 F.3d

449, 457 (6th Cir. 2008) (quoting *Harris*, 489 U.S. at 388).[6]  "To succeed on a

failure to train or supervise claim, the plaintiff must prove the following: (1) the

training or supervision was inadequate for the tasks performed; (2) the inadequacy

was the result of the municipality's deliberate indifference; and (3) the inadequacy

was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch.

Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).  Here, Shoup addresses the first element

by alleging that the City "failed to properly train Doyle in matters of the

requirement for, and what constitutes, probable cause to make an arrest and on

---

[6] The "deliberate indifference" standard applied in a claim for municipal liability
arising from failure to train is not to be confused with the "deliberate indifference"
standard as it applies to the medical needs of prisoners under the Eighth
Amendment, or to pretrial detainees under the Fourth Amendment, as they are two
distinct standards used to analyze two different constitutional violations. *Compare
Harris*, 489 U.S. 378 (1989) *with Farmer v. Brennan*, 511 U.S. 825 (1994)
(describing standard of deliberate indifference to health or safety of inmates that
gives rise to an Eighth Amendment violation).

the constitutional limits [of] a police officer's use of force." Although this is quite general, Shoup does allege that the training was inadequate for arrest, the task performed by Doyle that allegedly resulted in the violations she alleges. Thus, Shoup states the first element of a failure to train claim.

The second element, the showing of the municipality's deliberate indifference, may be demonstrated by alleging one of two types of situations. *Id*. The first situation arises from a pattern of constitutional violations or "repeated complaints of constitutional violations by [] officers," with the municipality's resulting inaction amounting to a policy of deliberate indifference. *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir.1999). Here, Shoup's Twelfth Claim states that "[t]here was a pattern of constitutional violations of which policy-making officials of the City of Huber Heights had knowledge." Doc. #2 at 13. Shoup makes no factual allegations in support of this "formulaic recitation" of an element of a deliberate indifference claim based on a failure to train. *Twombly*, 550 U.S. at 555. It provides no support for the claim she purports to state, and her factual allegations do not mention or allege any pattern of violations.

The second means to state a claim for failure to train that amounts to deliberate indifference is to allege a "failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction." *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir.1999). The Supreme Court has described this situation as one in which "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the

38

policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Harris*, 489 U.S. at 390. Shoup recites verbatim the language of the Supreme Court, but provides no factual allegation that might support her claim. Doc. #2 at 13. She has not, therefore, sufficiently plead the deliberate indifference element of her failure to train claim.

Although the foregoing conclusion makes the dismissal of her claim against the City inevitable, the Court notes that Shoup also fails to allege facts in stating the third element of such a claim. Again, her statement that "[t]here was a close causal connection between the deliberately indifferent training and the deprivation of the Plaintiff's federally protected right" is nothing more than a recitation of the third element of such a claim.

Thus, the Court agrees with Defendants' argument that Shoup has simply recited the legal elements of a Section 1983 claim arising from a municipality's failure to train, while failing to provide any factual allegations in support. Doc. #7 at 23-26. Shoup's response actually supports that conclusion, because she simply quotes two of the conclusory statements made in the Amended Complaint before asserting that she has "plead factual content that allows the Court to draw the reasonable inference that the City of Huber Heights is liable for the misconduct alleged." Doc. #16 at 18. These attempts mirror the deficiencies of the claim for failure to train that the plaintiff stated in *Armstrong v. U.S. Bank*, No. 1:02-cv-701, 2005 WL 1705023 (S.D. Ohio July 20, 2005), dismissed by the Court. In *Armstrong*, a mentally-challenged woman was mistakenly identified as a suspect

39

who had passed a stolen check. *Id.* at *1. After she was acquitted on the charge

of obstructing justice for allegedly refusing to provide her identity and answering

questions, she brought various Section 1983 claims, including a failure to train

claim against the municipality. *Id.* at *1-2. However, she failed to make any

"factual allegations explaining in what way the City failed to train its officers," or

any other factual allegations to support her claim, other than mentioning her

individual arrest. *Id.* at *7. Here, Shoup has done the same, and her claim against

the City must be dismissed. The Court DISMISSES said claim without prejudice,

and with leave to amend her complaint within twenty (20) days with factual

allegations that sufficiently plead said claim, and, additionally, comply with the

strictures of Rule 11 of the Federal Rules of Civil Procedure.

### 6. *Punitive damages against Doyle, Koss, and Kuntz (Thirteenth Claim)*

In her Thirteenth Claim for relief, Shoup alleges that Officer "Doyle, Koss,

and Kuntz acted with a malicious or evil intent or in callous disregard or with

reckless indifference" to her constitutional rights, entitling her to a "substantial

award of punitive damages" against those individual defendants. Doc. 2 at 13-14.

Defendants argue that because there is no basis for Shoup's constitutional claims

against the Defendants, their dismissal requires the dismissal of a claim for punitive

damages. Doc. #7 at 20. Defendants also argue that Shoup fails to allege facts

that would demonstrate the "necessary evil intent" or culpability that would justify

such an award. *Id.* at 20-21. In response, Shoup argues that her Amended

Complaint both describes the state of a defendant's mind that supports a punitive damage award, as well as the "factual content" that allows for a "reasonable inference" of Defendants' liability.  Doc. #16 at 16.

Punitive damages are available, under some circumstances, in a case brought under Section 1983. *Smith v. Wade*, 461 U.S. 30, 35 (1983) (citing *Carlson v. Green*, 446 U.S. 14, 22 (1980)).  A jury may allowed to consider an award of punitive damages "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* at 56.  Thus, "[t]he standard for punitive damages in a federal civil rights action is based on the defendant's state of mind and does not require egregious or outrageous behavior." *Preferred Props., Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 799 (6th Cir. 2002 ) (citing *Smith*, 461 U.S. at 56)).

However, the fundamental problem with Shoup's "punitive damages" claim is that "punitive damages are a remedy and not a separate cause of action." *Eldridge v. Rochester City Sch. Dist.*, --- F. Supp. 2d ---, 2013 WL 5104279 (W.D.N.Y. Sep. 13, 2013); *see also Villela v. City of Philadelphia*, No. CIV. A. 95-1313, 1995 WL 295318 (E.D. Pa. May 9, 1995) (treating separately stated cause of action for punitive damages as "merely the request for punitive damages" as a form of relief for Section 1983 claim).

Thus, because the Court has granted Shoup leave to amend her complaint to remedy her insufficiently stated constitutional claims, there is a possibility that her

41

request for punitive damage against Koss and Kuntz may be revived upon the filing of her Second Amended Complaint.  However, any such punitive damages should not be pled as a free-standing cause of action, but as a remedy for her claims.

Furthermore, Shoup's claim of excessive force against Officer Doyle has survived Defendants' Motion to Dismiss, which may provide a basis for an award of punitive damages.  *E.g.*, *McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730 (6th Cir. 2002) (upholding jury's punitive damage award to plaintiff who prevailed on claim of excessive force against police officers).  Such an award would depend on a jury's reasoned conclusions of facts regarding the state of Officer Doyle's mind and his intentions.  *Smith*, 461 U.S. at 56.  However, any such award would take the form of a remedy, not a cause of action independent of the excessive force claim.  Accordingly, the Court will DISMISS WITH PREJUDICE Shoup's Thirteenth Claim for punitive damages, while granting leave to Shoup to pray for punitive damages as a form of relief if she files a Second Amended Complaint.

## B.    State Law Claims

Defendants present two main arguments for dismissing Shoup's state law claims.  First, Defendants argue that the Ohio Revised Code provides them with immunity from Shoup's state law tort claims.  Defendants believe that the Ohio statute that provides the state's political subdivisions with immunity from tort liability, Ohio Rev. Code § 2744.02, applies because Shoup has only sued the defendant employees of the City in their official capacity.  Doc. #7 at 27.  They

argue that the provision that provides immunity to individual employees against tort claims, Ohio Rev. Code § 2744.03, does not apply, but if even it did, none of the enumerated exceptions would impose liability on Defendants. *Id.* at 31. Furthermore, Defendants argue that Koss and Kuntz are entitled to statutory immunity under Ohio Rev. Code § 4765.49, which provides immunity to paramedics from tort claims. Second, even if Defendants were not entitled to statutory immunity, Defendants argue that Shoup's state law claims fail as a matter of law on the facts that she has alleged. *Id.* at 35-42.

In her Response, Shoup argues that her state law claims are "against the individual defendants," and that the exception to immunity under Ohio Rev. Code § 2744.03(A)(6) applies, an exception which imposes liability for "acts or omissions" that were committed "with malicious purpose, in bad faith, or in a wanton or reckless manner." Doc. #16 at 18. Shoup also asserts that the facts as she has alleged them sufficiently demonstrate behavior that was wanton, reckless, and proximately caused her injury. *Id.*

In their Reply, Defendants attack the applicability of Ohio Rev. Code § 2744.03(A)(6), arguing that Shoup has only stated "official capacity" claims. Doc. #17 at 10. Defendants argue that the facts as alleged do not describe wanton or reckless behavior by the officers, and they point out that Shoup fails to address their argument that Ohio Rev. Code § 4765.49 provides immunity from suit to the paramedics *Id.* at 11-12.

43

>    1.    *Statutory Immunity for Ohio Political Subdivisions under Ohio Rev. Code. § 2744.02*

Defendants' first argument asserts that the statutory immunity from tort law claims that Ohio provides to political subdivisions applies to them because Shoup has only sued the defendant employees of the City in their official capacity. Ohio courts apply a three-part test to determine whether a political subdivision enjoys immunity from tort liability under Ohio Revised Code § 2744.02(A)(1). *Hubbard v. Canton City Sch. Bd. Of Educ.*, 780 N.E.2d 543, 546 (Ohio 2002). The statute states that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1). The first inquiry is whether the entity in question qualifies as a "political subdivision." *Hubbard*, 780 N.E.2d at 546. The City of Huber Heights qualifies as a political subdivision, because the definition includes a municipal corporation. Ohio Rev. Code § 2744.01(F). Shoup herself alleges that the City is a political subdivision under the statute. Doc. #2 at 3. Furthermore, police and emergency medical services are each defined as a "governmental function" under the statute. Ohio Rev. Code § 2744.01(C)(2)(a).

The second step examines whether any of the five exceptions to immunity enumerated in Ohio Rev. Code § 2744.02(B) apply. *Hubbard*, 780 N.E.2d at 546. Here, Defendant argues that Shoup's Amended Complaint fails to identify which

44

exception to immunity applies and fails to allege facts that would trigger one of the exceptions. Shoup's Memorandum in Opposition also fails to identify which exception to the City's immunity might apply, and in fact, fails to even mention Defendants' assertion of immunity under Ohio Rev. Code § 2744.02(A)(1) when defending her state law claims. Doc. #16 at 18-19. The Court interprets this silence as a concession that the City is entitled to statutory immunity from Shoup's state law tort claims under Ohio Rev. Code § 2744.02(A)(1). *See Stephens v. City of Akron*, 729 F.Supp. 2d 945, 965 (granting statutory immunity to city under Ohio Rev. Code § 2744.02(A)(1) on plaintiffs' tort claims where plaintiff fails to argue that any exception to Section 2744.02(B) applies). Because the Court has determined that the City is entitled to statutory immunity, it need not reach the third step of the analysis, which asks whether any other defense that might grant immunity under Section 2744.03 might apply.

### 2. *Statutory Immunity for City Employees under Ohio Revised Code § 2744.03*

Shoup does, however, argue that Ohio Revised Code § 2744.03(A)(6) exempts the individual Defendants from statutory immunity, rendering them liable for her state law tort claims. Doc. #16 at 18. Defendants argue that an analysis of the individual City employees' immunity under Section 2744.03 is "inappropriate and unnecessary" because Shoup has only plead claims against them in their official capacity. Doc. #7 at 31. As a preliminary matter, the Court does not agree with this characterization of Shoup's claims. It is true that Shoup

45

does not explicitly state that Defendants were sued in their individual capacities. In the caption, each Defendant is merely named, with no accompanying designation that describes the capacity in which they are sued. However, both Ohio and federal courts must scrutinize the complaint and the "course of proceedings" to determine in what capacity a plaintiff sues a defendant. *UAP-Columbus JV326132 v. Young*, 2012-Ohio-2471, 2012 WL 1997704 (Ohio Ct. App. June 5, 2012); *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001). The Sixth Circuit has stated that the "when a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 61 (6th Cir. 1995). The analysis "considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." *Moore*, 272 F.3d at 773 n.1 (citing *Biggs*, 66 F.3d at 61).

In the caption, each Defendant is merely named, with no accompanying designation that describes the capacity in which they are sued. Defendant's assertion that Shoup has sued Koss, Kuntz, and Officers Doyle, Waler, and Ashley in their official capacities is supported only by a citation to Paragraphs 3 through 14 of the Amended Complaint. Doc. #7 at 27. Therein, Shoup alleges that each Defendant was employed by the City, was acting within the course and scope of

46

his employment, and was acting on behalf of the City "in his capacity as a police officer" or "in his capacity as a firefighter/paramedic." Nevertheless, Shoup has sued the employees for a number of intentional torts under Ohio law, including assault and battery, false imprisonment/false arrest, and intentional infliction of emotional distress, alleging that their actions were illegal, malicious, extreme, and outrageous. Furthermore, she has requested punitive damages, placing Defendants on notice that they are potentially individually liable. In addition, her Memorandum in Opposition asserts that she has made claims "against the individual defendants," invoking the exception to their immunity that she believes applies under Ohio Revised Code § 2744.03(A)(6). Finally, Defendants themselves have raised the qualified immunity defense against Shoup's federal claims, which is only available to defendants sued in their individual capacity. Thus, the Amended Complaint and the course of proceedings suggest that she has sued Defendants in both their individual and official capacities. Accordingly, an analysis of their statutory immunity as individuals under Ohio Revised Code § 2744.03 is appropriate, in spite of Defendants' protestations.

Ohio Revised Code § 2744.03(A)(6) grants an individual employee of a political subdivision immunity from tort liability unless "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; [or] (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) Civil liability is expressly imposed upon the employee by" another provision of the Ohio

Revised Code. Shoup argues that the second exception applies, because she has alleged "that the acts or omissions of the individual employees were wanton and reckless and proximately resulted in injury to" her. Defendants argue that none of Shoup's factual allegations amount to wanton or reckless behavior, and Defendants are therefore entitled to immunity against her state law claims.

The Ohio Supreme Court has stressed that "wanton" and "reckless" specify different degrees of care in this statute. *Anderson v. City of Massilon*, 983 N.E.2d 266 (Ohio 2012). "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id.* at 267. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.*

The only state law claim that mentions Officer Waler and Officer Ashley is Shoup's Fifth Claim, for intentional infliction of emotional distress. The facts of her Amended Complaint allege that both officers were employed by the City of Huber Heights. Doc. #2 at 3. The Fifth Claim alleges that they "intended to cause emotional distress" to Shoup; "knew or should have known that their actions would result in serious emotional distress to her;" engaged in "extreme and outrageous conduct" that is "utterly intolerable in a civilized community;" that their "actions directly and proximately caused Plaintiff mental anguish and emotional distress." However, the Amended Complaint is utterly devoid of any factual

48

allegations regarding either officer, other than the fact of their employment by the City. She fails to even allege that they were at the scene, other than asserting the legal conclusion that they "aided, abetted, and ratified Doyle in his unlawful acts" against her. Shoup's claim, therefore, fails as a matter of law. Furthermore, the lack of factual allegations in her Amended Complaint makes it impossible to compare the officers' alleged conduct to the kind of conduct described in Ohio Revised Code § 2744.03(A)(6). The Court, therefore, declines to reach the issue of statutory immunity on this claim. Instead, the Court will DISMISS Shoup's claim for intentional infliction of emotional distress against Officer Waler and Officer Ashley without prejudice, subject to being restated as a supplemental claim in any Second Amended Complaint that Plaintiff files with this Court within twenty (20) days, and, additionally, subject to the strictures of Rule 11 of the Federal Rules of Civil Procedure.

With regards to Officer Doyle, Shoup alleges that he subjected her to assault and battery (First Claim), false arrest (Second Claim), false imprisonment (Third Claim), malicious prosecution (Fourth Claim), and intentional infliction of emotional distress (Fifth Claim). Returning to the standards under Ohio Revised Code § 2744.03(A)(6), the question is whether Shoup's allegations that Officer Doyle threw her to the ground, handcuffed her, placed her in his squad car, held her there, and insulted her in front of paramedics amounts to the type of "wanton" or "reckless" conduct required to strip an employee of statutory immunity.

For several reasons, the Court cannot conclude that Shoup has failed to allege conduct that a jury might reasonably conclude was wanton or reckless. First, contrary to Defendants' assertion, wanton conduct is not equivalent to, nor does it entail, a "disposition to perversity." Doc. #17 at 11. In *Anderson*, the Ohio Supreme Court confirmed that "the court abandoned 'disposition to perversity' as an element of the definition of wanton misconduct" quite some time ago. *Anderson*, 983 N.E.2d at 272 (citing *Hawkins v. Ivy*, 363 N.E.2d 367 (Ohio 1977)). Furthermore, the Court does not agree with Defendants' characterization of Officer Doyle's alleged conduct as merely "rude" or "unprofessional," in light of her allegedly injured state and the force allegedly employed to detain her. Doc. #77 at 33. Second, the question of whether Officer Doyle failed to "exercise *any* care" whatsoever "in circumstances in which there is great probability that harm [would] result" is a necessarily fact intensive inquiry that may be inappropriate to address on a motion to dismiss. *Id.* at 267. If, as Shoup alleges, Officer Doyle knew that she had just been physically assaulted, and she was visibly injured, a jury might find that there was a great probability that harm would result from throwing her to the ground or preventing her from immediately going to the hospital.

Furthermore, the Court cannot say that Shoup has not alleged reckless conduct, based on the allegations she has made regarding the manner of her seizure by Officer Doyle. If, as Shoup alleges, Officer Doyle knew she was injured, a jury might reasonably conclude that throwing her to the ground constituted "a

conscious disregard or indifference" to an "obvious risk" of greater injury,

amounting to more than mere negligence. *Id.* Accordingly, the Court concludes

that Officer Doyle is not entitled to statutory immunity under Ohio Revised Code §

2744.03(A)(6) against Shoup's state law tort claims.

### 3. Statutory Immunity for Koss and Kuntz under Ohio Revised Code § 4765.49

Defendants argue that Koss and Kuntz are entitled to immunity from

Shoup's tort claims under Ohio Revised Code § 4765.49, the immunity statute

that applies to paramedics and other "first responders" providing emergency

medical services. The statute states that:

> A first responder, emergency medical technician-basic, emergency
> medical technician-intermediate, or emergency medical technician-
> paramedic is not liable in damages in a civil action for injury, death, or
> loss to person or property resulting from the individual's
> administration of emergency medical services, unless the services are
> administered in a manner that constitutes willful or wanton
> misconduct.

Ohio Rev. Code § 4765.49.

Defendants argue that Shoup's allegations can only demonstrate "negligence

on the part of Koss and Kuntz for failing to properly diagnose her brain injury," but

not a complete failure to exercise care or purposeful harm amounting to willful or

wanton conduct that could provide an exception to immunity. Doc. #7. If

paramedics actually believe that a person is injured or ill enough to require

hospitalization and nevertheless fail to transport the person to the hospital, such

failure may constitute a willful and wanton misconduct that strips them of

51

statutory immunity. *See Weber v. City Council of Huber Heights*, No. 18329, 2001 WL 109196 (Ohio Ct. App. Feb. 9, 2001). In *Weber*, paramedics were dispatched to a man's house after his wife reported that he was suffering symptoms of a stroke. *Id.* at *1. The man told the paramedics "that he was suffering from double vision, and that he thought he was having a stroke." *Id.* After examining him, the paramedics told his wife that his "vital signs were 'fine' and that he was suffering from a 'panic attack,'" and left. *Id.* The next morning, it was "obvious" that the man, who could no longer hear, had suffered further damage. He was then hospitalized and diagnosed with a stroke. *Id.* at *2. The Ohio Court of Appeals reversed the trial court's summary judgment decision that the paramedics' conduct was not willful or wanton, and were entitled to statutory immunity under Ohio Revised Code § 4765.49. *Id.* at *4. The appellate court stated that if the paramedics believed the man was only having a panic attack, or that his symptoms did not indicate a stroke, then their conduct was merely negligent. *Id.* However, a material factual issue remained, because if the paramedics thought that the plaintiff "was having a stroke when they arrived at his home, then reasonable minds could find that the failure to transport him under those circumstances was willful and wanton misconduct." *Id.*

*Weber* provides several compelling similarities to the facts that Shoup has alleged. Shoup requested to go to the hospital, told the paramedics she had been punched in the jaw, said that she had chest pains, told them three times that she could not breathe, and the blood pressure reading that they took for her resulted in

a reading of 180/90. Doc. #2 at 7. Nevertheless, as in *Weber,* Shoup alleges that they left without taking her to the hospital or providing medical care.

The difference between the situation that Shoup describes and *Weber,* however, is that the only injury that Shoup alleges that she suffered as a result of this treatment was emotional distress. The only state law claim she has brought against Koss and Kuntz is her Sixth Claim, for intentional infliction of emotional distress. In *Weber*, the injury that resulted from the paramedics' behavior was the untreated effects of the stroke as it worsened overnight. Here, in contrast, Shoup only alleges that Koss and Kuntz inflicted emotional distress on her. A claim for intentional infliction of emotional distress, if adequately stated, will surely defeat the statutory immunity Defendants invoke, simply because its elements describe conduct that are willful or wanton. Such a claim imposes liability on "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another . . . for such emotional distress, and[,] if bodily harm to the other results from it, for such bodily harm." *Yeager v. Local Union 20, Teamsters, Chauffers, Warehousemen & Helpers of Am.*, 453 N.E.2d 666, 671 (Ohio 1983) (quoting Restatement (Second) of Torts § 46 (1965), *abrogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007). In addition, such liability only results when "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

53

It is not clear that Shoup has adequately stated such a claim, based on the limited amount of facts alleged. Shoup has not, for example, alleged any description of the emotional distress she suffered that would allow the Court to compare her allegations to the elements of such a claim. Shoup claims that Koss and Kuntz "ridiculed" her in their EMS Incident Report, but she does not allege when she read the report, or what effect it had. Even construing the facts in her favor, she must have read the report after the night in question; thus, although reading it may have affected her, it does not support her claim that she suffered emotional distress based on actions of Koss and Kuntz that occurred on the night that she interacted with them.

The Court acknowledges Defendants' point that Shoup has made little or no effort to defend her claims against Koss and Kuntz. The Court simply cannot conclude, based on the limited factual allegations and the early procedural stage of the case, that Defendants are entitled to statutory immunity on a claim that the Court cannot recognize has been adequately stated. Thus, rather than simply grant statutory immunity to Defendants for Shoup's claim of intentional infliction of emotional distress, the Court will instead DISMISS said claim without prejudice, subject to being restated as a supplemental claim in any Second Amended Complaint that Plaintiff files with this Court within twenty (20) days, and subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure.

54

### 4. Failure to Sufficiently Allege State Law Claims

In addition to statutory immunity, Defendants also claim that Shoup's state law tort claims fail as a matter of law because she has not alleged facts that adequately establish any of them. Doc. #7 at 35-42. The Court notes that Shoup does not even list her Fourth Claim, for malicious prosecution against Officer Doyle, among her existing state law claims, or refer to it in any way in her Memorandum in Response. Accordingly, her Fourth Claim, for malicious prosecution against Officer Doyle, is DISMISSED WITH PREJUDICE.

The Court also notes that it has dismissed both Shoup's Fifth Claim, for intentional infliction of emotional distress against Officers Waler and Ashley, and her Sixth Claim, against Koss and Kuntz, without prejudice, subject to being restated as supplemental claims in any Second Amended Complaint, and subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure.

Shoup's Seventh Claim purports to state a cause of action under Ohio Revised Code § 2744.07, the statute that requires a political subdivision to indemnify its employees in any action brought against them alleging civil liability. This statute does not provide Shoup with a cause of action against the City or anyone; it imposes a duty on the City to defend its employees from her claims. "Requiring the subdivision to indemnify its employee is entirely different from imposing direct liability on the subdivision." *Piro v. Franklin Twp.*, 656 N.E.2d 1035, 1042 (Ohio Ct. App. 1995) (rejecting argument that Ohio Rev. Code §

55

2744.07 imposes liability). Accordingly, Shoup's Seventh Claim is DISMISSED with prejudice.

Thus, the state claims that the Court must test for sufficiency include only the following, all of which are only brought against Officer Doyle 1) the First Claim, for assault and battery; 2) the Second Claim, for False Imprisonment; 3) the Third Claim, for False Arrest; and the Fifth Claim, for intentional infliction of emotional distress.

### a) Assault and Battery (First Claim)

Under Ohio law, "[a] person is subject to liability for battery when he acts intending to cause a harmful or offensive contact, and when a harmful contact results." *Love v. City of Port Clinton*, 524 N.E.2d 166, 167 (Ohio 1988) (citing Restatement (Second) of Torts (1965) 25, Section 13). *Id.* In *Love*, the Ohio Supreme Court recognized that a police officer's acts of "subduing" and "handcuffing" a person "are acts of intentional contact which, unless privileged, constitute a battery." Furthermore, the same acts are "undoubtedly offensive to a reasonable sense of personal dignity." *Id.* Here, Shoup alleges that Officer Doyle threw her to the ground, handcuffed her, and placed her in his cruiser, all of which comport with *Love*'s definition of battery. As discussed in its analysis of Shoup's Section 1983 excessive force claim, the Court cannot determine that the force that Officer Doyle employed was objectively reasonable. *See supra* Section III.A.2. The Court cannot, therefore, dismiss Shoup's battery claim on that basis, as

Defendants argue. Accordingly, Shoup has stated a plausible claim for battery under Ohio law, and the Court OVERRULES Defendants' Motion to Dismiss, as it pertains to said claim.

Assault, which Shoup has also alleged, is a "clearly distinguishable" tort at common law from battery.  Smith v. John Deere Co., 614 N.E.2d 1148 (Ohio Ct. App. 1993).  Under Ohio law:

> the tort of assault is defined as the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact. The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching. An essential element of the tort of assault is that the actor knew with substantial certainty that his or her act would bring about harmful or offensive contact.

*Id.*

Here, Shoup has not alleged any facts to suggest that Officer Doyle threatened her with harm, or that she feared imminent harm or offensive contact with him before the alleged battery. Her allegations lack the "definitive act" of the tort, because she fails to allege an act, such as a statement or threat, by Officer Doyle that placed her in fear of harmful contact.  She simply states that after she refused to hand the baby to the neighbor, he threw her to the ground and arrested her. These allegations do not plausibly state a claim of assault under Ohio common law.  Accordingly, Shoup's claim of assault against Officer Doyle is DISMISSED without prejudice, subject to being restated as a supplemental claim in any Second

57

Amended Complaint that Plaintiff files with this Court within twenty (20) days, and subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure.

> **b)** **False Imprisonment and False Arrest (Second and Third Claims)**

Under Ohio law, false imprisonment requires "(1) the intentional detention of the person and (2) the unlawfulness of the detention." *Hodges v. Meijer, Inc.*, 717 N.E.2d 806, 809 (1998). Similarly, false arrest requires "the depriv[ation] of a person of his or her liberty without lawful justification. Specifically, a plaintiff must show only that he or she was detained and that the detention was unlawful." *Harvey v. Horn*, 514 N.E.2d 452, 454 (Ohio Ct. App.). As discussed *supra*, Section III.A.1., the seizure that Shoup alleges was not unlawful, but an objectively justifiable exercise of Officer Doyle's community caretaker function. Furthermore, Shoup presents no argument to counter Defendants' assertion that she fails to even state the elements of this claim in her Memorandum in Opposition. Doc. #16 at 19. The Court will, therefore, DISMISS Count Two and Count Three of the Amended Complaint without prejudice, subject to being restated as a supplemental claim in any Second Amended Complaint that Plaintiff files with this Court within twenty (20) days, and subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure.

c)   **Intentional infliction of emotional distress against Officer Doyle (Fifth Claim)**

As stated above, the tort of intentional infliction of emotion distress requires a showing of "extreme and outrageous conduct [that] intentionally or recklessly causes severe emotional distress to another" based on conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager*, 453 N.E.2d at 671.

According to Defendants, Shoup's allegations describe "at most, rude and unprofessional behavior, but not the sort of extreme behavior necessary for intentional infliction of emotional distress." Doc. #7 at 39. The Court believes that it is possible that Officer Doyle's physical actions, as opposed to rude or unprofessional behavior, may have resulted in emotional distress to Shoup, but possibility is not enough. Shoup's allegations do not plausibly support the elements of such a claim, which are all she offers. Accordingly, her Fifth Claim, for intentional infliction of emotional distress against Officer Doyle is DISMISSED without prejudice, subject to being restated as a supplemental claim in any Second Amended Complaint that Plaintiff files with this Court within twenty (20) days, and subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure.

IV.     **Conclusion**

For the reasons set forth above, the Court SUSTAINS in part and OVERRULES in part the Defendants' Motion to Dismiss (Doc. #7).

With regards to Plaintiff's federal claims under 42 U.S.C. § 1983, the Court OVERRULES Defendants' Motion to Dismiss, as it pertains to Shoup's claim of Excessive Force against Officer Doyle (Ninth Claim).

The Court SUSTAINS Defendants' Motion to Dismiss, with prejudice, as it pertains to Plaintiff's federal claims for:

  1) Malicious Prosecution under the Fourth Amendment (Tenth Claim); and

  2) Punitive Damages (Thirteenth Claim).

The Court SUSTAINS Defendants' Motion to Dismiss, as it pertains to the following federal claims under 42 U.S.C. § 1983, which are DISMISSED WITHOUT PREJUDICE, with leave granted to Plaintiff to file a Second Amended Complaint within twenty (20) days to restate the dismissed claims, with notice of Defendants' challenge of qualified immunity to such claims, and subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure:

1) Unlawful Seizure (Eighth Claim) against Officer Doyle;

2) Deliberate Indifference to Serious Medical Needs (Eleventh Claim) against Officer Doyle, Koss, and Kuntz;

3) Failure to Train Officer Doyle (Twelfth Claim) against the City.

The Court OVERRULES Defendants' Motion to dismiss, as it pertains to Plaintiff's state law claim of Battery (First Claim) against Officer Doyle.

The Court SUSTAINS Defendants' Motion to dismiss, as it pertains to the following state law tort claims of Plaintiff, which are DISMISSED WITH PREJUDICE:

1) Malicious Prosecution against Officer Doyle (Fourth Claim); and

2) All state law tort claims purportedly stated against the City of Huber Heights, including the purported claim for indemnification of its employees (Seventh Claim), as the City has immunity from said claims under Ohio Rev. Code § 2744.02(A)(1).

The Court SUSTAINS Defendants' Motion to dismiss, as it pertains to the following state law tort claims of Plaintiff, which are DISMISSED WITHOUT PREJUDICE, subject to being restated as supplemental claims in any Second Amended Complaint that Plaintiff files with this Court within twenty (20) days, and subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure:

1) Assault claim (First Claim) against Officer Doyle;

2) False Imprisonment (Second Claim);

3) False Arrest (Third Claim);

4) Intentional Infliction of Emotional Distress (Fifth Claim) against

   Officers Doyle, Waler, and Ashley; and

5) Intentional Infliction of Emotional Distress against Koss and Kuntz

   (Sixth Claim).


Date: September 24, 2013

WALTER H. RICE
UNITED STATES DISTRICT JUDGE